1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CRISTIAN AMAYA-QUINTEROS,              No.  1:25-cv-1672 AC P

12                  Petitioner,

13        v.                                 ORDER

14   CORECIVIC, INC, et al.,

15                  Respondents.

16

17        Pursuant to the parties consent, all proceedings and entry of final judgment are assigned to

18   the magistrate judge.  ECF No. 9.  Pending before the court is petitioner's Motion for Preliminary

19   Injunction.  ECF No. 17.  For the following reasons, petitioner's motion is GRANTED.

20                              BACKGROUND

21     A.  Factual Background

22        Petitioner, Cristian Amaya-Quinteros, a native and citizen of El Salvador, entered the

23   United States in November 2021, and was encountered by a border patrol agent.  ECF No. 17 at

24   2; ECF No. 16 at 18-22 (Form I-213, Record of Deportable/Inadmissible Alien).  He was held for

25   over two months, processed for expedited removal on January 26, 2022, and ordered removed

26   under § 235(b)(1) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C.

27   § 1225(b)(1).  ECF No. 17 at 2; ECF No. 16 at 24-27 (Forms I-867A and I-867B, Record of and

28   Jurat for Sworn Statement in Proceedings under Section 235(b)(1) of the Act), 30 (Form I-296,

                                       1

1   Notice to Alien Ordered Removed/Departure Verification).  Because petitioner expressed a fear

2   of persecution, he was informed that prior to execution of the removal order he would have a

3   credible fear interview ("CFI") with an asylum officer.  ECF No. 17 at 26-27 (Forms I-867A and

4   I-867B), 32-33 (Form M-444, Information About Credible Fear Interview).

5          On January 31, 2022, DHS issued petitioner a Notice of Custody Determination releasing

6   him pursuant to the authority under § 236 of the INA and part 236 of title 8, Code of Federal

7   Regulations.  ECF No. 17 at 37-38 (Form I-286, Notice of Custody Determination).  Sometime

8   between January 31, 2022, and February 2, 2022, petitioner was released from custody.  See ECF

9   No. 17 at 3; ECF No. 22-2 at 7.

10         After release, petitioner applied for asylum and for Special Immigrant Juvenile Status

11  ("SIJS") with United States Citizenship and Immigration Services ("USCIS") and was granted

12  SIJS in 2023.  ECF No. 17 at 3; ECF No. 16 at 40 (Form I-797C, Receipt Notice, I-589

13  Application for Asylum and for Withholding of Removal), 53 (Form I-797C, Receipt Notice, I-

14  360, Petition for Special Immigrant Juvenile Status); 56 (Form I-797C, Approval Notice, Special

15  Immigrant Juvenile).  Petitioner has been unable to apply for SIJS adjustment of status ("SIJS

16  AOS"), which if granted would result in lawful permanent resident status, because there is a

17  significant backlog on the availability of a visa for SIJS AOS.  See id. ¶¶ 29-30.[1]

18         On November 12, 2025, petitioner received a notice scheduling him for a CFI at the San

19  Francisco Asylum Office.  ECF No. 17 at 4; ECF No. 16 at 71 (Form G-56, Notice of Credible

20  Fear Interview).  On November 24, 2025, he appeared for his interview, received a negative

21  credible fear finding, and was re-detained after his interview.  ECF No. 17 at 4; ECF No. 22-1 at

22  6-10 (Form I-869, Record of Negative Credible Fear Finding and Request for Review by

23  Immigration Judge).  According to DHS records, at some point between February 2, 2022, and

24  _____

25  [1]  See also USCIS, When to File Your Adjustment of Status Application for Family-Sponsored or
    Employment-Based Preference Visas: December 2025, available at https://www.uscis.gov/green-

26  card/green-card-processes-and-procedures/visa-availability-priority-dates/when-to-file-your-
    adjustment-of-status-application-for-family-sponsored-or-employment-based-119; USCIS,

27  Immigration and Citizenship Data, Form I-140, I-360, I-526 Approved EB Petitioner Awaiting
    Visa Final Priority Dates (Fiscal Year 2025, Quarter 3), available at

28  https://www.uscis.gov/tools/reports-and-studies/immigration-and-citizenship-data.

1    November 24, 2025, DHS determined that petitioner was removable under 8 U.S.C.

2    § 1182(a)(9)(C)(i)(II) "as [a noncitizen] who has been ordered removed under section 235(b)(1),

3    section 240, or any other provision of law, and who enters or attempts to reenter the United States

4    without being admitted."  Also, at some point either before or on the day of petitioner's interview,

5    USCIS's Asylum office made a referral to ICE[2] and it was "determined that Amaya-Quinteros

6    was processed as an expedited removal with credible fear on November 21, 2021."  ECF No. 22-2

7    at 5-7 (New Form I-213).  The records indicate petitioner has no criminal history.  Id. at 7.

8    According to respondents, petitioner was detained pursuant to 8 U.S.C. § 1225(b)(1) (INA

9    § 235(b)(1)).  ECF No. 22-2 at 2.

10          On November 29, 2025, petitioner filed a writ of habeas corpus petition and motion for

11    temporary injunctive relief.  ECF Nos. 1, 2.  A few days later, USCIS informed petitioner that

12    they exercised their discretion to terminate his SIJS deferred action. ECF No. 17 at 4; ECF No. 16

13    at 80-83 (Termination of Special Immigrant Juvenile Deferred Action).  Petitioner's SIJS

14    classification remained approved.  Id. at 80, 82.  The following day, an immigration judge

15    vacated DHS's negative credible fear determination.  ECF No. 17 at 4; ECF No. 16 at 75-78 (In

16    Credible Fear Review Proceedings, Order of the Immigration Judge).

17          On December 9, 2025, a charging document was purportedly issued based on the vacated

18    expedited removal order.  ECF No. 22-2 at 9 (Electronic Case Management Docket Report,

19    printed December 12, 2025).  Case management records indicate that petitioner is charged with

20    inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) (INA 212(a)(6)(A)(i)).  Id.  Neither petitioner's

21    counsel, respondents' counsel, or the court have a copy of the Notice to Appear and cannot

22    independently verify whether petitioner is charged with any other grounds of inadmissibility.  At

23    the hearing on December 17, 2025, respondents' counsel represented that there was no reason to

24    believe, based on the available record, that petitioner is charged with any other grounds of

25    inadmissibility.

26          On December 10, 2025, petitioner moved the immigration judge for a bond

27

28    [2] At the preliminary injunction hearing on December 17, 2025, respondents' counsel was unable to answer whether a decision to arrest and detain petitioner was made on or before his CFI.

redetermination hearing but does not expect it will be successful given BIA precedent.  ECF No. 17 at 4; ECF No. 16 at 86-94 (Motion for Bond Redetermination).  Petitioner remains detained.

B. <u>Procedural Background</u>

On November 29, 2025, petitioner Cristian Amaya-Quinteros filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 along with a Motion for Temporary Restraining Order and Preliminary Injunction.  ECF Nos. 1, 2.  Respondents filed a response to the petition and an opposition to petitioner's motion, informing the court of recent developments in petitioner's immigration case, and arguing that the court should dismiss the petition and deny the motion.  ECF No. 12.  Petitioner filed a reply raising new arguments and seeking different relief than the relief sought in the motion for temporary and/or preliminary injunctive relief.  ECF No. 14.

On December 8, 2025, the court held a hearing on the motion and informed the parties that, in light of recent developments, petitioner's motion for temporary restraining order would be denied as moot, and petitioner would be given an opportunity to amend the petition and file a motion for preliminary injunction.  The court issued an order denying petitioner's initial motion, and setting a briefing schedule for the amended petition and motion for preliminary injunction, and a hearing date.  ECF No. 15.  Respondents were also ordered to obtain petitioner's complete A-file.  <u>Id.</u>[3]

Petitioner has filed a First Amended Petition for Writ of Habeas Corpus and a Motion for Preliminary Injunction.  ECF Nos. 16, 17, 24. The motion is accompanied by an affidavit in support of the motion and a proposed order.  ECF Nos. 20, 21.  Respondents have filed a Return to Amended Petition for Writ of Habeas Corpus and Response to Motion for Preliminary Injunction.  ECF No. 22.  Petitioner has filed a reply.  ECF No. 25.

On December 17, 2025, the court held a hearing on petitioner's preliminary injunction, and the matter was submitted.  ECF No. 26.

---

[3]  As discussed below, the minute order erroneously reflects that the A-file was to be filed with the court.  <u>See</u> ECF No. 15.  During the hearing on December 8, 2025, the court expressed that while the filing or lodging of parts of the A-file may become necessary, it is not the court's intention to have the complete A-file filed at this time.

1    C. Relevant Legal Framework

2        The United States Supreme Court has acknowledged that "[i]mmigration law can be

3    complex, and . . . is a legal specialty of its own." Padilla v. Kentucky, 559 U.S. 359, 369 (2010).

4    Accordingly, to set the stage for discussion, the court outlines the relevant legal framework.

5            1. 8 U.S.C. § 1225 (Mandatory Detention)

6                a. Overview

7        Title 8 U.S.C. § 1225 governs the procedures by which the government may mandatorily

8    detain "an applicant for admission." Section 1225(a)(1) defines "an applicant for admission" as a

9    noncitizen "present in the United States who has not been admitted or who arrives in the United

10   States (whether or not at a designated port of arrival and including [a noncitizen] who is brought

11   to the United States after having been interdicted in international or United States waters)."

12   8 U.S.C. § 1225(a)(1).

13       "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1)

14   and those covered by § 1225(b)(2)." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). Both

15   categories are subject to mandatory detention until a certain point or until certain proceedings

16   have concluded. Id. Despite mandatory detention, applicants for admission may be temporarily

17   released on parole "for urgent humanitarian reasons or significant public benefit." Id. at 288

18   (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)). The "express exception to

19   detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under

20   which [noncitizens] detained under § 1225(b) may be released." Id. at 300. Accordingly, there is

21   no statutory right to a bond hearing for noncitizens detained under § 1225(b). Id. at 296-97.

22                b. Section 1225(b)(1) – Expedited Removal and Mandatory Detention

23       Section 1225(b)(1) applies to applicants for admission who are (1) "arriving in the United

24   States" and are inadmissible under 8 U.S.C. § 1182(a)(6)(C) (for fraud or misrepresentation) or

25   § 1182(a)(7) (for lack of valid documents); or (2) not natives or citizens of certain countries in the

26   Western Hemisphere, inadmissible under 8 U.S.C. § 1182(6)(A) (for entry without admission or

27   parole), inadmissible under 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7), and have not affirmatively

28   shown they have physically resided in the United States for a continuous period of two years prior

5

1   to this determination.  8 U.S.C. § 1225(b)(1)(A)(i), (iii).  If a noncitizen subject to § 1225(b)(1)

2   "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration

3   officer "shall refer the [noncitizen] for an interview by an asylum officer."  8 U.S.C.

4   § 1225(b)(1)(A)(i)-(ii).  If after conducting a credible fear interview the asylum officer[4]

5   determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained

6   for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(i)-(ii).

7   However, if after conducting a credible fear interview the asylum officer determines that the

8   noncitizen does not have a credible fear of persecution, the noncitizen may request review by an

9   immigration judge.[5]  8 U.S.C. § 1225(b)(1)(B)(iii)(I), (III).  The immigration judge shall review

10  the negative credible fear determination expeditiously and "in no case later than 7 days after" a

11  negative determination by an asylum officer.  8 U.S.C. § 1225(b)(1)(B)(iii)(III).  The noncitizen

12  "shall be detained pending a final determination of credible fear of persecution and, if found not

13  to have such fear, until removed."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

14          If the immigration judge concurs with the negative determination by the asylum officer,

15  the case returns to DHS for removal of the noncitizen.  8 C.F.R. § 1208.30(g)(2)(iv)(A).  The

16  decision is final and unappealable, though USCIS may reconsider a negative credible fear

17  determination.  Id.  If the immigration judge disagrees with the negative determination by the

18  asylum officer, the immigration judge "shall vacate the Notice and Order of Expedited Removal

19  and refer the case back to DHS for further proceedings" before the asylum office.  8 C.F.R.

20  § 1208.30(g)(2)(iv)(B).  "Alternatively, DHS may commence removal proceedings under section

21  240 of the Act, during which time the [noncitizen] may file an application for asylum and

22  withholding of removal" before the immigration court.  Id.

23  ////

24  ─────────────────────

25  [4]  An "asylum officer" who conducts the credible fear interview is defined as "an immigration
    officer."  8 U.S.C. § 1225(b)(1)(E).  An "immigration officer" is "an employee or class of
26  employees of the Service or of the United States designated by the Attorney General."  8 U.S.C.
    § 1101(a)(18).
27  [5]  An "'immigration judge' means an attorney whom the Attorney General appoints as an
    administrative judge within the Executive Office of Immigration Review" who "shall not be
28  employed by the Immigration and Naturalization Service."  8 U.S.C. § 1101(b)(4).

1

    c.  <u>Section 1225(b)(2) (Regular Proceedings for Applicants for Admission</u>
        <u>and Mandatory Detention)</u>

2

3      Section 1225(b)(2) is broader than (b)(1) and "serves as a catchall provision that applies to

4  *all* applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant

5  here." <u>Jennings</u>, 583 U.S. at 287.  Section 1225(b)(2)(A) states that a noncitizen "applicant for

6  admission" who is "seeking admission" and who does not fall under § 1225(b)(2)(B) exceptions

7  or is subject to subparagraph (C) "shall be detained for a proceeding under section 1229a of this

8  title."

9          2.  <u>8 U.S.C. § 1226 (Mandatory and Discretionary Detention)</u>

10              a.  <u>Overview</u>

11     Title 8 U.S.C. § 1226 governs detention of noncitizens who are already present in the

12  United States but do not have an absolute right to remain here and are subject to full, standard

13  removal proceedings.  <u>See</u> <u>Jennings</u>, 583 U.S. at 288-89 ("U.S. immigration law authorizes the

14  Government to detain certain [noncitizens] *seeking admission into* the country under

15  §§ 1225(b)(1) and (b)(2)" and "certain [noncitizens] *already in* the country pending the outcome

16  of removal proceedings under §§ 1226(a) and (c).") (emphasis added).  Section 1226

17  "distinguishes between two different categories of [noncitizens]." <u>Id.</u> at 288.  Noncitizens under

18  § 1226(a) are subject to discretionary detention, while noncitizens under § 1226(c) are subject to

19  mandatory detention.  <u>Id.</u> at 288-89.

20              b.  <u>Section 1226(a) – Discretionary Detention</u>

21     "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for

22  arrest and detention of an [noncitizen] 'pending a decision on whether the [noncitizen] is to be

23  removed from the United States." <u>Id.</u> at 288 (citing 8 U.S.C. § 1226(a)).  "Except as provided in

24  subsection (c) of this section," the Attorney General "may continue to detain" or "may release" a

25  noncitizen detained under § 1226(a) on "bond" or "conditional parole."  8 U.S.C. § 1226(a).

26     An Immigration and Customs Enforcement ("ICE") officer makes the initial

27  determination whether a person should be apprehended under § 1226(a).  8 C.F.R. § 236.1(c)(8).

28  A noncitizen is release if they can "demonstrate to the satisfaction of the [ICE] officer that such

release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (quoting 8 C.F.R. § 236.1(c)(8)). If a noncitizen is detained, they are entitled to a bond hearing before an immigration judge. Jennings, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)). Additionally, the noncitizen may request additional bond hearings whenever there is a material change in circumstances. 8 C.F.R. § 1003.19(e). At a bond redetermination hearing, the immigration judge has broad discretion to continue detention, release, or determine a bond amount for release. 8 C.F.R. § 1236.1(d)(1). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the [immigration judge] will order his release." Rodriguez Diaz, 53 F.4th at 1197.

### c. Section 1226(c) – Mandatory Detention

Section 1226(c) sets out a statutory category of noncitizens "who may *not* be released under § 1226(a)." Jennings, 583 U.S. at 289 (emphasis in original). Pursuant to § 1226(c)(1)(A)-(D), "the Attorney General shall take into custody any" noncitizen who is inadmissible or deportable under 8 U.S.C. §§ 1182(a)(2) or 1182(a)(3)(B), § 1227(a)(2)(A)(i)-(iii), (B), (C), or (D), or § 1227(a)(4)(B). Earlier this year, through the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025), Congress added § 1226(c)(1)(E) to also subject the following group of noncitizens to mandatory detention: noncitizens who are (i) inadmissible under 8 U.S.C. § 1182(a)(6)(A) (for entry without inspection or parole) *and* (ii) charged with specific enumerated crimes.

### DISCUSSION

A. Petitioner's A-File

To understand the basis of petitioner's detention and what has transpired since his arrival to the United States in November 2021, the court asked respondents' counsel several questions during the December 8, 2025, hearing. Because counsel was unable to answer the court's questions, including those regarding the basis of petitioner's release in January 2022, whether a warrant was issued for petitioner's detention on November 24, 2025, and/or what charges warrant

8

1    his detention at this time, the court ordered respondents' counsel to obtain petitioner's complete
2    A-file.  ECF No. 15.

3        Respondents ask the court to reconsider its order "requiring the production of petitioner's
4    A-file" because A-files generally contain documents that are irrelevant to a habeas petition,
5    include sensitive information, can range in volume from modest to quite large, and must be
6    certified to be filed with the court.  ECF No. 22 at 2 n.2.  Respondents also argue that because
7    they have submitted additional documentation responsive to the court's inquiries, this case can be
8    appropriately resolved on the basis of those documents and accompanying pleadings.  Id.

9        Upon review, it appears the December 8, 2025, minute order erroneously states, "Counsel
10   for respondent is ordered to obtain and file with the court petitioner's complete A-file."  ECF No.
11   15.  As expressed at the hearing, the court ordered that respondents request and obtain the A-file
12   in order to ensure counsel's ability to promptly file (under seal if appropriate) discrete documents
13   or to lodge the entire administrative record as ordered by the court in the future.  As clarified
14   here, that order is affirmed.  Respondents will not be required to file (and/or lodge) the complete
15   A-file with the court at this time.  Instead, respondents will be required to provide a copy of
16   petitioner's A-file, upon receipt, to petitioner's counsel.

17       The court agrees with respondents that the current record is sufficient for resolution of
18   petitioner's motion.

19   B.  Motion for Preliminary Injunction

20       The motion for preliminary injunction seeks petitioner's release on the grounds that his
21   continued detention violates 8 U.S.C. § 1226(a), the Fifth Amendment Due Process Clause, and
22   the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No.
23   110-457, 122 Stat. 5044, 5074 (2008) ("TVPRA").  ECF No. 17 at 2; ECF No. 21.  In opposition,
24   respondents argue that the motion for preliminary injunction should be denied because
25   petitioner's claims fail on the merits.  ECF No. 22 at 1-2.  Specifically, respondents argue that (1)
26   petitioner is detained pursuant to 8 U.S.C. § 1225(b) as an applicant for admission and is subject
27   to mandatory detention, (2) petitioner was re-detained under mandatory detention required by
28   statute and further process is not required, and (3) petitioner's SIJS does not protect him from

1   removal proceedings.  Id. at 6-12.  Alternatively, respondents argue that petitioner's motion

2   should be denied because he has not carried his burden in showing irreparable harm, balance of

3   equities tips in his favor, and an injunction is in the public interest.  Id. at 12-15.

4          At the hearing held December 17, 2025, respondents' counsel clarified their position as

5   follows: that on November 24, 2025 petitioner was lawfully detained under § 1225(b)(1); and that

6   because the immigration judge vacated the negative credible fear determination and expedited

7   removal order and DHS has since issued an NTA commencing proceedings under § 1229a,

8   petitioner is no longer subject to detention under § 1225(b)(1) and is currently detained under

9   § 1225(b)(2).  Respondents' counsel also confirmed that in 2022 petitioner was released pursuant

10  to § 1226(a).  Counsel, however, argued that this was done in error because before 2025 the

11  government erroneously interpreted §§ 1225(b) and 1226(a) and applied § 1226(a) to individuals

12  like petitioner.  Respondents' counsel stated that this was not a clerical error such as completion

13  of the wrong form; it was an error based on the government's prior, incorrect interpretation of the

14  law.  Respondents' counsel further clarified that based on the government's 2025 statutory

15  interpretation of § 1225(b) and § 1226, it is respondents' position that petitioner is an "applicant

16  for admission" subject to mandatory detention under § 1225(b).  Petitioner's counsel responded

17  that several courts have rejected respondents' argument.

18         C.  Legal Standard

19         The standards for issuing a temporary restraining order and a preliminary injunction are

20  "substantially similar."  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839

21  n.7 (9th Cir. 2001).  To obtain preliminary injunctive relief, plaintiff must show (1) likelihood of

22  success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3)

23  that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.

24  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "[I]f a plaintiff can only show that

25  there are serious questions going to the merits — a lesser showing than likelihood of success on

26  the merits — then a preliminary injunction may still issue if the balance of hardships tips sharply

27  in the plaintiff's favor, and the other two Winter factors are satisfied."  Friends of the Wild Swan

28  v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

1    D.  <u>Analysis</u>

2        1.  <u>Likelihood of Success on the Merits</u>

3            a.  <u>Petitioner Has Shown a Likelihood of Success on his Claim under 8
                U.S.C. § 1226(a)</u>

4

5        The parties disagree whether petitioner was lawfully detained on November 24, 2025, and

6    whether petitioner's continued detention is lawful.  ECF No. 16 ¶¶ 39-40; ECF No. 17 at 2; ECF

7    No. 22 at 6-9; ECF No. 25 at 8-11.  Petitioner argues that he is now and was at the time of his re-

8    detention subject to discretionary detention under § 1226(a).  Respondents' position is that at the

9    time of petitioner's re-detention, he was detained under the authority in § 1225(b)(1), and that he

10   is currently detained under the authority in § 1225(b)(2).  Although respondents' basis for

11   detention has changed, the parties' dispute has and continues to be whether petitioner is subject to

12   mandatory detention under § 1225(b) or subject to discretionary detention under § 1226(a).

13       As noted above, respondents' do not contest that in 2022 petitioner was released pursuant

14   to DHS's then operative interpretation of §§ 1225 and 1226.  Instead, they argue that even if

15   petitioner was previously subject to proceedings conducted under § 1226, DHS is nevertheless

16   entitled to transfer petitioner from § 1226(a) proceedings to § 1225(b) proceedings based on

17   DHS's new statutory interpretation of these statutes.  The new interpretation rests on the position

18   that "[t]hose who are applicants for admission, like Petitioner, are subject to the processes of 8

19   U.S.C. § 1225, while those who are not applicants for admission, such as those officially admitted

20   or paroled into the United States, are subject to 8 U.S.C. § 1226."  ECF No. 22 at 8.

21       The court finds that the respondents' position disregards the plain meaning of

22   § 1225(b)(1).  The court also joins several other courts in rejecting respondents' argument and

23   finding that the government's position also "disregards the plain meaning of section

24   1225(b)(2)(A)," "disregards the relationship between sections 1225 and 1226," "would render a

25   recent amendment to section 1225(c) superfluous," and is inconsistent with decades of prior

26   statutory interpretation and practice."  <u>Lepe v. Andrews</u>, No. 1:25-cv-1163-KES-SKO (HC), __

27   F.Supp.3d.__, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases); <u>Alejandro v.

28   Olson</u>, No.1:25-cv-2027-JPH-MKK, 2025 WL 2896348, at *6 (S.D. Ind. Oct. 11, 2025)

(collecting cases); J.U. v. Maldonado, No. 25-CV-4836 (OEM), __ F.Supp.3d. __, 2025 WL 2772765, at *7-9 (E.D.N.Y. Sept. 29, 2025) ("Respondent's novel and expansive construction of § 1225(b)(2)(A) fails to withstand scrutiny because it disregards the plain meaning of that provision, would render § 1226 and recent amendment to it superfluous, and is inconsistent with Supreme Court's prior statutory interpretations.")

Starting with the text of the relevant statutes, § 1225(b)(1) applies a noncitizen who is (1) "an applicant for admission," (2) "arriving in the United States" or a noncitizens described in § 1225(b)(1)(A)(iii), and (3) is "inadmissible under section 1182(a)(6)(C) or 1182(a)(7)." 8 U.S.C. § 1225(b)(1).  Section 1225(b)(2)(A) applies to (1) an "applicant for admission" (2) who is "seeking admission" to the United States, and (3) who "is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2).  Section 1226(a) applies to individuals who have been arrested "on a warrant issued by the Attorney General."  8 U.S.C. § 1226(a).

An "applicant for admission" is a noncitizen "who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having ben interdicted in international or United States waters)."  8 U.S.C. § 1225(a)(1).  Under the INA's implementing regulations, an "arriving alien" is "an applicant for admission *coming or attempting to come into the United States*."  8 C.F.R. § 1.2 (emphasis added).[6]  "The use of the present progressive 'arriving,' rather than the past tense 'arrived,' implies some temporal or geographic limit."  See Martinez v. Hyde, No. CV 25-11613-BEM, __ F.Supp.3d. __, 2025 WL 2084238, at *6 (D.Mass. July 24, 2025) (quoting Matter of M-D-C-V-, 28 I & N Dec. 18, 23 (B.I.A. 2020)).  "'Seeking' means 'asking for' or 'trying to acquire or gain.'"  Lepe, 2025 WL 2716910 at *5 (citing Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking).  Like "arriving," the use of a present participle, "seeking," "necessarily implies some sort of present-tense action."  Martinez, 2025 WL 2084238, at *2.  "Admission" means "the lawful entry of the [noncitizen] into the United

---

[6]  While the court is no longer required to defer to an agency's construction of § 1225(b), Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394 (2024), that definition accords with the plain meaning of the phrase "arriving in the United States."

1 States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

2 And "entry" has long been understood to mean "a crossing into the territorial limits of the United

3 States." Hing Sum v. Holder, 602 F.3d 1092, 1100-01 (9th Cir. 2010) (citation omitted).

4    Under the plain text, for § 1225(b)(1) to apply, a noncitizen must be actively coming or

5 attempting to come *into* the United States and be inadmissible under § 1182(a)(6)(C) or (7)(A),

6 and for § 1225(b)(2) to apply a noncitizen must be actively asking for or trying to gain lawful

7 entry *into* the United States.  See Lopez Benitez v. Francis, No. 25 CIV 5937 (DEH), __

8 F.Supp.3d at __, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025).  Here, on November 24,

9 2025, when petitioner was re-detained, petitioner was not actively coming or attempting to come

10 into the United States, nor was he actively asking for or trying to gain lawful entry into the United

11 States because he had already entered the United States and had been present for four years.  At

12 that point, petitioner could only be said to be attempting to or seeking to remain in the United

13 States.  This conclusion accords with the example provided in Lopez Benitez and the court's

14 conclusion in that case.  See Lopez Benitez, 2025 WL 2371588, at *7.

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as *already present* there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but *now seek a lawful means of remaining there*. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for more than two years.

22 Id. (emphasis added).

23    Moreover, on the day of his re-detention, petitioner was not inadmissible under either

24 §§ 1182(a)(6)(C) or (7)(A).  As respondents' counsel noted in their brief and during the recent

25 hearing, as far as he is aware, based on the representations made by the deportation officer and

26 the records provided, petitioner's only charge of inadmissibility is under § 1182(a)(6)(A) and

27 there is nothing in the record to suggests he is inadmissible under any other grounds.  See ECF

28 No. 22-2 at 2, 9.  Accordingly, under the plain text, petitioner was not subject to §§ 1225(b)(1) or

1  (b)(2).[7]

2      The government's position is also inconsistent with the Supreme Court's observation in

3  Jennings that "U.S. immigration law authorizes the Government to detain certain aliens seeking

4  admission *into the country* under §§ 1225(b)(1) and (b)(2)" and "authorizes the Government to

5  detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings

6  under §§ 1226(a) and (c)."  Jennings, 583 U.S. at 290 (emphasis added).

7      Another problem with the government's new interpretation of §§ 1225 and 1226 is that it

8  would render superfluous a recent amendment to § 1226(c).  As noted above, § 1226(c) requires

9  mandatory detention of certain criminal noncitizens.  8 U.S.C. § 1226(c)(1).  Earlier this year,

10  Congress, through the Laken Riley Act, added mandatory detention for certain noncitizens.  This

---

11  [7]  Moreover, the court agrees with several judges in this district and other district courts in finding

12  that when a noncitizen is released from custody under § 1226(a), the governing statute is § 1226,
   not § 1225.  See Gomez Villela v. Robbins, No. 1:25-cv-1393 KES SKO, 2025 WL 3648362, at

13  *4 (E.D. Cal. Dec. 17, 2025) (rejecting the government's argument that petitioner was subject to
   § 1225(b) where petitioner was *not* paroled pursuant to "the only mechanism by which

14  '[noncitizens] detained under § 1225(b) may be released." (quoting Jennings, 583 U.S. at 300));

15  BILAL A. v. Wofford, No. 1:25-cv-1715 KES HBK (HC), 2025 WL 3648366, at *3 (E.D. Cal.
   Dec. 16, 2025) (where the "records establish that petitioner was released 'in accordance with' 8

16  U.S.C. § 1226 . . . 8 U.S.C. § 1225(b)(1) cannot be applied"); C.A.R.V. v. Wofford, No. 1:25-cv-
   1395 JLT SKO, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3, 2025) ("The government's recent

17  interpretation of the relationship between § 1225 and § 1226 is unfounded and detention is
   therefore not 'mandatory' in this case, where petitioner has been present in the United States for

18  approximately four years and was released on his own recognizance well before Respondents
   adopted the new interpretation of the governing statutes."); Jimenez v. FCI Berlin Warden, __

19  F.Supp.3d __, 2025 WL 2639390 (D.N.H. Sept. 8, 2025) (rejecting the government's argument

20  that Jimenez was presently confined under § 1225(b) where he had been "released from custody
   under § 1225(b)(1) in August 2023 pursuant to a grant of conditional parole under § 1226 and

21  subsequently arrested on a § 1226 warrant nearly two years later.").

22      This is true even if petitioner was at one point in expedited removal proceedings and

23  subsequently released.  See Souza v. Robbins, No. 1:25-cv-1597-DJC-JDP, 2025 WL 3263897, at
   *3 (E.D. Cal. Nov. 23, 2025) (the court agreed petitioner was subject to § 1226(a) because,

24  although she "initially receive a Notice and Order of Expedited Removal pursuant to §
   1225(b)(1), she was subsequently released from detention . . . pursuant to Section 1226); cf.

25  Rodriguez-Acurio v. Almodovar, No. 2:25-cv-6065 (NJC), __ F.Supp.3d __, 2025 WL 3314420

26  (E.D.N.Y. Nov. 28, 2025) (finding that § 1225(b)(1) did not apply despite petitioner's initial
   detention at the border because "when ICE affirmatively choses to release an individual on

27  parole, it has made the determination that it no longer intends to fast-track their removal"
   (quoting Aviles-Mena, No. 25-cv-6783, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025)).

28

new section, § 1226(c)(1)(E), mandates mandatory detention of noncitizens who are

(1) inadmissible under 8 U.S.C. § 1182(a)(6)(A) (for entry without inspection or parole *and* (2)

charged with specific enumerated crimes.  8 U.S.C. § 1226(c)(1)(E) (emphasis added); see also

Gomes v. Hyde, No. 1:25-cv-11571-JEK, __ F.Supp.3d. __, 2025 WL 1869299, at *6-7 (D.

Mass. July 7, 2025) (interpreting § 1225(a)(2) in light of new § 1226(c)(1)(E)).   If every

"applicant for admission"—which is defined, as relevant here, as a noncitizen "present in the

United States who has not been admitted," 8 U.S.C. § 1226(a)(1), is already subject to mandatory

detention under § 1225(b)(2)(A), as the government contends, there would have been no need for

the new § 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the

United States without being admitted or paroled" and who has been "charged with, arrested for,

or admits to" committing certain crimes, see 8 U.S.C. § 1226(c)(1)(E).  This court joins the

majority view that reading § 1225 as the government proposes would render section

1226(c)(1)(E) superfluous, which it will not do.  See Beltran v. Lynch, No. 1:25-CV-1689 2025

WL 3673580, at *6 (W.D. Mich. Dec. 18, 2025); Y-C- v. Genalo, No. 25-CV-06558 (NCM),

2025 WL 3653496, at *5 (E.D.N.Y. Dec. 17, 2025); Ding v. Janecka, No. 5:25-CV-03184-DOC-

JDE, 2025 WL 3453957, at *3 (C.D. Cal. Nov. 28, 2025);  Patel v. Crowley, No. 25 C 11180,

2025 WL 2996787, at *8–9 (N.D. Ill. Oct. 24, 2025); Lepe, 2025 WL 2716910, at *6; Gomes,

2025 WL 1869299, at *5; Lopez Benitez, 2025 WL 2371588, at *7; Romero v. Hyde, No. CV 25-

11631-BEM, __ F.Supp.3d. at __, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025);

Maldonado v. Olson, No. 25-CV-3142 (SRN/SGE), __ F.Supp.3d. __, 2025 WL 2374411, at *12

(D. Minn. Aug. 15, 2025) ("The Court will not find that Congress passed the Laken Riley Act to

'perform the same work' that was already covered by § 1225(b)(2).").

        The government's position is also inconsistent with the longstanding pre-2025 practice of

applying § 1226(a) to noncitizens, such as petitioner, who entered the country without admission.

As respondents' counsel acknowledged, prior to 2025 the government routinely applied § 1226(a)

to noncitizens who entered the country without admission.  See Matter of Yajure Hurtado, 29

I&N Dec. 216 n.6 (B.I.A. 2025) ("We acknowledge that for years Immigration Judges have

conducted [section 1226(a)] bond hearings for aliens who entered the United States without

15

1   inspection."); Martinez, 2025 WL 2084238, at *6.  The court finds that the government's

2   longstanding practice of applying § 1226(a) to noncitizens who entered without inspection or

3   admission, although not determinative, Loper Bright, 603 U.S. 385-86, is consistent with the text

4   and statutory scheme of §§ 1225(b) and 1226(a).

5          For these reasons, the court finds that the plain language of the statutes, the overall

6   structure of these statutes, the Supreme Court's interpretation of the statutes, the intent of

7   Congress, and the long-standing practice of applying § 1226(a) prior to 2025 to noncitizens like

8   petitioner (and was applied to petitioner for almost four years before his re-detention) makes clear

9   that § 1226(a) is the appropriate statutory framework for noncitizens like petitioner who are

10  *already in* the country and not subject to § 1226(c).  The court also joins several judges in this

11  district, in finding that when a noncitizen is released from custody under § 1226(a), the governing

12  statute is § 1226, not § 1225.  See Gomez Villela v. Robbins, No. 1:25-cv-1393 KES SKO, 2025

13  WL 3648362, at *4 (E.D. Cal. Dec. 17, 2025) (rejecting the government's argument that

14  petitioner was subject to § 1225(b) where petitioner was *not* paroled pursuant to "the only

15  mechanism by which '[noncitizens] detained under § 1225(b) may be released." (quoting

16  Jennings, 583 U.S. at 300)); BILAL A. v. Wofford, No. 1:25-cv-1715 KES HBK (HC), 2025 WL

17  3648366, at *3 (E.D. Cal. Dec. 16, 2025) (where the "records establish that petitioner was

18  released 'in accordance with' 8 U.S.C. § 1226 . . . 8 U.S.C. § 1225(b)(1) cannot be applied");

19  C.A.R.V. v. Wofford, No. 1:25-cv-1395 JLT SKO, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3,

20  2025) ("The government's recent interpretation of the relationship between § 1225 and § 1226 is

21  unfounded and detention is therefore not 'mandatory' in this case, where petitioner has been

22  present in the United States for approximately four years and was released on his own

23  recognizance well before Respondents adopted the new interpretation of the governing statutes.");

24  Jimenez v. FCI Berlin Warden, __ F.Supp.3d __, 2025 WL 2639390 (D.N.H. Sept. 8, 2025)

25  (rejecting the government's argument that Jimenez was presently confined under § 1225(b) where

26  he had been "released from custody under § 1225(b)(1) in August 2023 pursuant to a grant of

27  conditional parole under § 1226 and subsequently arrested on a § 1226 warrant nearly two years

28  later.").

1    The court also joins courts in this circuit in finding that although parole under § 1226(a)

2    may be revoked at any time, "DHS may not re-arrest that noncitizen absent a change in

3    circumstances." Salcedo Aceros v. Kaiser, No. 25-cv-6924 EMC (EMC), 2025 WL 2637503, at

4    *1 (N.D. Cal. Sept. 12, 2025) (citing Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir.

5    2021)); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (where the decision to

6    release a noncitizen under § 1226(a) is made by a DHS officer, not an immigration judge, the

7    government's practice has been to require a showing of changed circumstances before re-arrest).

8    Because petitioner is subject to § 1226(a) discretionary detention, not mandatory detention

9    under § 1225(b), and respondents' have not put forth a change in circumstances warranting his re-

10    detention, petitioner has shown that he is likely to succeed on the merits of his claim under 8

11    U.S.C. § 1226(a).

12                    b.    Petitioner Has Shown a Likelihood of Success on His Due Process Claim

13    Petitioner also argues that his continued detention violates his due process rights under the

14    Fifth Amendment.  ECF No. 17 at 6-9; ECF No. 25 at 8-11.  Respondents argue that petitioner's

15    continued detention is constitutional and does not violate due process because he is currently

16    mandatorily detained under § 1225(b), noncitizens in expedited removal proceedings only have

17    "those rights regarding admission that Congress has provided by statute," and mandatory

18    detention under § 1225(b) is like mandatory detention under § 1226(c), which the Supreme Court

19    upheld, because the duration of detention is definite.  ECF No. 22 at 9-10.

20    Because, as discussed above, the court finds that petitioner is not subject to mandatory

21    detention under § 1225(b), respondents' arguments, which rely on this assumption, are rejected.

22    The question—whether petitioner has shown a likelihood of success on the merits of his

23    procedural due process claim—remains.  The court finds that he has.

24    The Due Process Clause protects persons in the United States from being deprived of life,

25    liberty, or property without due process of law. U.S. Const. amend. V.  It is firmly established

26    that these protections extend to noncitizens present in the United States.  See Zadvydas v. Davis,

27    533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United

28    States, including aliens, whether their presence here is lawful, unlawful, temporary, or

17

1  permanent."); <u>Wong Wing v. United States,</u> 163 U.S. 228, 238 (1896) ("It must be concluded that

2  all persons within the territory of the United States are entitled to the protection guaranteed by

3  [the Fifth Amendment], and that even [noncitizens] shall not . . . be deprived of life, liberty, or

4  property without due process of law.").

5      Courts examine procedural due process claims in two steps: the first step asks whether

6  there exists a protected liberty interest under the Due Process Clause, and the second step

7  examines the procedures necessary to ensure any deprivation of that protected liberty interest

8  accords with the Constitution.  See <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454,

9  460 (1989).

10      As has been detailed by numerous other courts, individuals released from ICE custody

11  have a protected interest in remaining out of custody.  See <u>Pinchi v. Noem</u>, 792 F. Supp. 3d 1025,

12  1033 (N.D. Cal. 2025).  "Even where the revocation of a person's freedom is authorized by

13  statute, that person may retain a protected liberty interest under the Due Process Clause."  <u>Rico-</u>

14  <u>Tapia v. Smith</u>, No. CIV-25-00379 SASP-KJM, __ F.Supp.3d __, 2025 WL 2950089, at *8 (D.

15  Haw. Oct. 10, 2025) (citing <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 782 (1973) and <u>Morrissey v.</u>

16  <u>Brewer</u>, 408 U.S. 471, 481–82 (1972)).  Here, petitioner was released from custody pursuant to

17  discretionary release under § 1226(a).  Since that time, petitioner has remained out of custody,

18  without incident.  He has no criminal history and has applied for and been granted SIJS, which

19  provides him a pathway to lawful permanent residency and citizenship.  On these facts, petitioner

20  has a clear liberty interest in his continued freedom.

21      Because petitioner has established a liberty interest, the court must determine what

22  procedures are necessary to protect that interest.  To make that determination, the court applies

23  the three-part test established in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976).  See <u>Diaz v. Garland</u>,

24  53 F. 4th 1189, 1206-07 (applying the <u>Mathews</u> test to a procedural due process challenge to a

25  detention under 8 U.S.C. § 1226, explaining that "<u>Mathews</u> remains a flexible test that can and

26  must account for the heightened governmental interest in the immigration detention context"); <u>see</u>

27  <u>also</u> <u>Hernandez v. Sessions</u>, 872 F.3d 976, 993 (9th Cir. 2017) (applying <u>Mathews</u> factors in

28  immigration detention context).  The <u>Mathews</u> test considers three factors: (1) the private interest

1    affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews,

2    424 U.S. at 335.

3        Petitioner's private interest in remaining free from imprisonment is, without a doubt,

4    substantial.  "Freedom from imprisonment—from government custody, detention, or other forms

5    of physical restraint—lies at the heart of the liberty that Clause protects."  Zadvydas, 533 U.S. at

6    690.  As has been repeatedly stated, petitioner remained out of custody for almost four years.

7    Petitioner has no criminal history.  At the time of his detention, he had approved SIJS, deferred

8    action, and work authorization.  DHS terminated petitioner's SIJS deferred action and work

9    authorization after he filed his habeas petition.  This action, however, did not impact petitioner's

10   SIJS, which remains intact and continues to provide petitioner with a pathway to lawful

11   permanent residency and citizenship.

12       The risk of erroneous deprivation is also considerable.  The record suggests that petitioner

13   has never received a bond hearing.  "The risk of an erroneous deprivation [of liberty] is high"

14   when "[the petitioner] has not received any bond or custody redetermination hearing."  A.E. v.

15   Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

16   "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the

17   outset of detention."  Jennings, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

18   And detention under this statute is justified when an alien poses a flight risk or a danger to the

19   community.  See Zadvydas, 533 U.S. at 690.  Respondents' records, dated the day of petitioner's

20   re-detention, show that petitioner has no criminal history.  ECF No. 22-2 at 7.  Respondents do

21   not argue, nor have they presented any evidence that petitioner has violated any condition of his

22   release or that there has been a change in circumstances since his 2022 release into the United

23   States and his re-detention on November 24, 2025.  On these facts, the value of additional

24   procedural safeguards is substantial.

25       Although the government has an interest in the enforcement of its immigration laws, the

26   government's interest in detaining petitioner without any procedural protections is substantially

27   "low."  Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes

28   to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest

19

1  in doing so without [any procedural protections] is low."); Doe v. Becerra, 787 F. Supp. 3d 1083,

2  1094 (E.D. Cal. 2025).  Custody hearings in immigration court are routine and impose a

3  "minimal" cost on the government.  Doe, 787 F. Supp. 3d at 1094.

4        Having found that petitioner has a liberty interest and determined that he is entitled to

5  process, and that process should have been afforded to him immediately upon detention, the court

6  finds that petitioner has established a likelihood of success on the merits of his procedural due

7  process claim.

8              2.  Irreparable Harm

9        "It is well established that the deprivation of constitutional rights 'unquestionably

10  constitutes irreparable injury.'"  Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)

11  (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).  Moreover, "[t]he Ninth Circuit has

12  recognized 'irreparable harms imposed on anyone subject to immigration detention' including

13  'the economic burdens imposed on detainees and their families as a result of detention.'"

14  Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017).  Accordingly, petitioner has

15  established that he will suffer irreparable harm in the absence of preliminary injunctive relief.

16              3.  Balance of Equities and Public Interest

17        The analysis of the last two Winter factors, balance of the equities and public interest,

18  merge when the government is the opposing party (non-moving party), as is the case in this

19  action.  See Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing Nken v.

20  Holder, 556 U.S. 418, 435 (2009)).

21        "[I]t is always in the public interest to prevent the violation of a party's constitutional

22  rights."  Melendres, 695 F.3d at 1002 (internal quotations and citations omitted.  Here, petitioner

23  has demonstrated that he is likely unlawfully detained in violation of his due process rights and is

24  suffering irreparable harm as a result.

25        On the other hand, the burden on respondents in releasing petitioner from detention is

26  minimal.  "[T]he only potential injury that the government faces is a 'short delay' in detaining

27  Petitioner[ ] if it 'ultimately demonstrates to a neutral decisionmaker' that their detention is

28  necessary to prevent flight or danger to the community."  Valencia Zapata, 2025 WL 2741654, at

1  *13 (quoting <u>Salcedo Aceros</u>, 2025 WL 2637503, at *14).  Respondents "cannot reasonably

2  assert that it is harmed in any legally cognizable sense by being enjoined from constitutional

3  violations." <u>Baird v. Bonta</u>, 81 F.4th 1036, 1042 (9th Cir. 2023) (citing <u>Zepeda v. INS</u>, 753 F.2d

4  719, 727 (9th Cir. 1983) [(finding "the INS cannot reasonably assert that it is harmed in any

5  legally cognizable sense by being enjoined from constitutional violations")] and <u>Rodriguez v.</u>

6  <u>Robbins</u>, 715 F.3d 1127, 1145 (9th Cir. 2013) (holding that the government "cannot suffer harm

7  from an injunction that merely ends an unlawful practice" implicating "constitutional concerns").

8  Accordingly, the court finds that the balance of equities and public interest weigh in favor of

9  injunctive relief and consequently, all four <u>Winter</u> factors weigh in favor of petitioner.

10          4. <u>Bond</u>

11          "The court may issue a preliminary injunction or a temporary restraining order only if the

12  movant gives security in an amount that the court considers proper to pay the costs and damages

13  sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P.

14  65(c).  The court has "discretion as to the amount of security required, if any," and it "may

15  dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the

16  defendant from enjoining his or her conduct." <u>Jorgensen v. Cassiday</u>, 320 F.3d 906, 919 (9th Cir.

17  2003) (citation modified).  Because "the [government] cannot reasonably assert that it is harmed

18  in any legally cognizable sense by being enjoined from constitutional violations," <u>Zepeda</u>, 753

19  F.2d at 727, the court finds that no security is required here.

20                              <u>CONCLUSION</u>

21  In accordance with the above, IT IS HEREBY ORDERED that:

22  1. Respondents' request for reconsideration of the court's December 8, 2025, order (ECF

23      No. 22 at 2 n.2) is DENIED.  The order, however, is modified to reflect the intent of the

24      court.  Respondents are ordered to obtain a complete copy of petitioner's A-file and to

25      provide petitioner's counsel a copy upon receipt.  Respondents do not need to file and/or

26      lodge the complete A-file with the court at this time.

27  2. Petitioner's Motion for Preliminary Injunction (ECF No. 17) is GRANTED.

28  3. Petitioner Cristian Amaya-Quinteros shall be released immediately from Respondents'

custody.  Respondents shall not impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing.  Respondents shall file a status report confirming petitioner's release within three (4) days from the date of this order.

4.  Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice—describing the change of circumstances necessitating his arrest — and detention, to be provided no less than seven (7) days' prior to a pre-deprivation bond hearing.  The hearing shall be before a neutral arbiter pursuant to § 1226(a) and it's implementing regulations.  At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight,[8] and petitioner shall be allowed to have his counsel present.

5.  The parties are directed to meet and confer within seven (7) days from the service of this order for the purpose of submitting a joint proposed briefing schedule in this case.

6.  The parties shall submit a joint proposed briefing schedule to the court no later than fourteen (14) days from the date of this order.

DATED: December 19, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[8]  Courts reviewing similar cases have regularly applied this burden of proof.  The court adopts the view of those courts.  See e.g., Lopez v. Lyons, No. 2:25-cv-3174 DJC CKD, 2025 WL 3124116, at *5 n.3 (E.D. Cal. Nov. 7, 2025); Pablo Sequen v. Albarran, No. 25-cv-6487, __ F.Supp.3d.__, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 14, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *13–14 (E.D. Cal. Aug. 28, 2025); Castellon v. Kaiser, No. 1:25-cv-00968-JLT-EPG. 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).